## JENKINS BROS. v. KELLY & JONES CO.

(District Court, W. D. Pennsylvania. February 21, 1914.)

### No. 97.

1. TRADE-MARKS AND TRADE-NAMES (§ 11*)—PATENTED ARTICLE.

Where patented valves were manufactured and sold under the name "Jenkins valves" and the name became so associated with the patented article that it was the generic designation of the particular class of valves, plaintiff, as successor of the patentee, could not prevent the use of such name to designate similar valves manufactured by others after the patent had expired.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 15; Dec. Dig. § 11.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRADE-MARKS AND TRADE-NAMES (§ 71*)—DESIGNATION OF PATENTED AR-
TICLE—EXPIRATION OF PATENT.

Where, after the expiration of a patent on "Jenkins valves" defendant
began to manufacture and sell similar valves under the same name, it
was bound to disclose, in connection with the name, the source of manu-
facture in such way as to prevent the public from believing that defend-
ant's valves were those of the successor of the patentee.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 82; Dec. Dig. § 71.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 86*)—UNLAWFUL COMPETITION—SCOPE
OF RELIEF.

Plaintiff succeeded to the rights of the patentee in the manufacture
and sale of "Jenkins valves." After the expiration of the patent, defend-
ant began to manufacture and sell similar valves, which were put out
under the name "Jenkins valve" or "Standard Jenkins valve," and hav-
ing on the opposite side of the globe of the valve the initials of defend-
ant company. In 1901 plaintiff objected to defendant's use of the word
"Jenkins" in connection with its valve, and defendant offered to mark its
valves with the further words, "Made by Kelly-Jones Co.," but not on the
same side of the valve with the words "Jenkins valve." Plaintiff did not
accede to this, but did not institute suit for unlawful competition until
10 years thereafter. Held, that while plaintiff was entitled to an injunc-
tion restraining defendant's use of the word "Jenkins" as the name of
the valve, except in conjunction on the same side with the words, "Made
by Kelly-Jones Co.," plaintiff's laches barred its right to recover damages
and costs.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 95; Dec. Dig. § 86.*]

In Equity. Bill by Jenkins Bros. against the Kelly & Jones Com-
pany. Decree for complainants for an injunction without damages.

Macleod, Calver, Copeland & Dike, of Boston, Mass., for complain-
ants.

Kay & Totten, of Pittsburgh, Pa., for defendant.

ORR, District Judge. The bill in this case charges the defendant
with infringement of the trade-name of the complainant and with
unfair competition in business by selling valves which are so marked
as to cause the public to believe that they are the complainant's
valves.

About 1865 Edward Jenkins engaged in the business of selling
valves and manufacturing packing for valves. In 1868 he obtained
a patent for a globe valve. He had other patents for valves and for
the disc or packing to be used inside valves. He gave special atten-
tion to the manufacture of the discs or packing to be used in the
valves protected by his patents. The valves he caused and permitted
others to manufacture for him. He continued in this business alone
for a short time, when he took into partnership one of his sons. He
died in 1872, after which his surviving partner associated with him
another son of the inventor, and they carried on the business in the
firm name and style of Jenkins Bros. until about the year 1906, when
the business was incorporated under the name of Jenkins Bros.
This corporation has continued the business to date, and is the plain-
tiff in this suit.

That the valves covered by the Jenkins patent of 1868 were manufactured by others for the owners of the patent appears throughout the testimony, but especially in a circular to the trade issued by the partnership in 1877. That circular names 12 different firms or corporations which were manufacturing the Jenkins patent valve. The valve became known generally during the life of the patent as the Jenkins valve. This is a fact not seriously controverted by the plaintiff.

Without reference to the original patent of 1868, the nature of the Jenkins valve is shown by the following quotation from the specification of United States patent No. 362,630, issued May 10, 1887, to Charles Jenkins, one of the firm of Jenkins Bros.:

"The invention relates to the class of valves known as the Jenkins valve, or that class employing a removable disc or ring of packing or other material as a valve seat."

It does not appear that the valves during the life of the patent were marked in any way to indicate their origin. After the expiration of the patent on the valve, other manufacturers than those theretofore recognized by Jenkins Bros., began to manufacture the valve and advertised it for sale as the Jenkins valve. The predecessors of the plaintiff and the plaintiff have endeavored to protect the business which had grown up during the life of the patent, not only by advertising their successorship to the original patentee, but by the adoption of one or more trade-marks, which, however, need not be specially considered in this case. Their business has grown steadily in spite of competition.

Among those who began the manufacture and sale of the valve originally covered by the patent to Jenkins is the defendant and its predecessor, the partnership of Kelly & Jones. The defendant is a large manufacturer of fittings of various kinds, including valves. Defendant and its predecessors, for 12 years past at least, have been manufacturing the valve originally protected by the patent, and have advertised it in their catalogues and sold it to the trade throughout the United States as the Jenkins valve. Some of such valves made by the defendant have upon them no indication that they are the Jenkins valve. In other words, the word "Jenkins" does not appear, but there is upon one side of the globe of the valve the monogram, "K–J," and on the other side of the globe "Standard Valve." The defendant, however, has made many of the Jenkins valves, and is now making and selling them, having on one side of the globe of such valve, "Standard Jenkins Valve" in circular lettering around the monogram, "K–J," and on the other side of the globe of the valve in circular lettering the words, "Made by Kelly-Jones Co." surrounding the monogram, "K–J."

The business of the defendant in the selling of the valves so marked has been quite large, and is increasing. The plaintiff avers and has offered testimony tending to prove that the valves made by the defendant and marked by it as last described have not only a tendency to confuse the trade with respect to the source from which the valves come, but have actually deceived the trade to an extent which has

been the cause of great pecuniary loss to the plaintiff. The court is not satisfied from the evidence that there was any actual deception intended by the defendant or by the jobbers in the specific instances which are the subject of the testimony. The request made of a jobber for a Jenkins valve might be complied with by the delivery of a valve of the Jenkins type. The person who made the request might have supposed, and probably did suppose, in many of the cases, that the term "Jenkins" indicated the manufacturer and not the special type of valve. It is natural that persons should be inattentive to the source from which the article they desire comes. There are people who believe that the Corliss engine is made by only one manufacturer, and there are people who would believe that Babbitt's metal was still under the control of the discoverer or his family. The proof of actual deception is not sufficient in this case to lead the court to the belief that the plaintiff has been substantially injured by any deception of the public. So far as the defendant has advertised or catalogued the valves, the source of their production is made plain, yet the court must find as a fact that some people are liable to be deceived in the purchase of the valves of the defendant because the lettering indicating the source of manufacture is on the opposite side of the globe of the valve, and therefore separated from the description of the valve itself.

In 1901 correspondence took place between the plaintiff and the defendant through their solicitors, in which the plaintiff complained of the marking of the valves specially with the word Jenkins thereon. The defendant in that correspondence asserted the right of the defendant to use the word "Jenkins" on the valve, and on January 28, 1901, stated that the defendant was—

"ready to mark the Jenkins valves hereafter made by them as follows: Placing the mark on one or both sides of the valve, 'Jenkins valve made by the Kelly & Jones Co.'"

To this proposition the plaintiff never agreed and in the letter to the defendant's counsel of April 26, 1901, they said:

"The change in the stamping of the Kelly & Jones valve which you suggested in your letter of January 28th your clients were willing to make has been considered by my clients and by me. While we appreciate your and their efforts to meet our wishes, we are obliged to say that the trade would still mistake the Kelly & Jones valve for the Jenkins. This belief has been strengthened by actual cases of such error on the part of Jenkins Brothers' customers, the Kelly & Jones valve with the Jenkins mark having been sold to them and received by them as genuine Jenkins valves."

There is no sufficient excuse offered by the plaintiff for its delay in filing the present bill. From the date of the above correspondence, and the ascertainment of the facts stated in the last sentence quoted from the letter, 10 years were allowed to elapse before the bill was filed.

Evidence was offered on the part of the plaintiff to show that the valves manufactured by the defendant were inferior to those of the plaintiff. We cannot find that fact from the evidence. There is no substantial difference in the qualities of the valves. Each will answer

equally well the purposes for which they are intended, and that is specially to resist a maximum of pressure.

From the foregoing facts, the following conclusions must be reached.

[1] The defendant, after the expiration of the patent, had a right to manufacture valves such as had been protected by the patent, and to call them Jenkins valves, because during the existence of the monopoly secured by the patent the name had become so associated with the patented article that it became the generic designation of the particular class of valve. See Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118. No other authority is necessary on this point.

[2] The defendant having acquired the right to manufacture and sell valves as Jenkins valves was required in equity and good conscience to indicate the source from which they came. No other authority is necessary than the case of Singer Mfg. Co. v. June Mfg. Co., supra.

The defendant, however, must not only indicate the source from which they came, but must indicate it in such a way as to prevent the public from being imposed upon. While equity should not lend its aid to the extension of the monopoly granted to the inventor under the patent laws by preventing the use, after the expiration of the patent, of the generic term by which the patented article was designated, equity should not, on the other hand, permit a manufacturer to manufacture such article, after the expiration of the patent, to the detriment of the persons carrying on business in proper succession to the one originally possessed of the monopoly. We believe that it is the duty of a manufacturer, availing himself of the privilege of manufacturing a patented article after the expiration of the patent to declare thereon in no unmistakable terms the source from which it comes. In the case at bar, the defendant has placed upon the valves a statement as to their source, but it cannot be said that such statement is in unmistakable terms, because the language of that statement is not immediately connected with the language in which the valve is described. The description, being on one side of the valve, might be seen by one who did not turn it over in order to see the statement of its source. The valve, if set in position in connection with a system of steam or water distribution, would be so placed that it could not be turned by one observing it, and the description might be seen by reason of the valve's location, when the source from which it came could not be learned. The defendant, therefore, was guilty of unfair competition in the respect only that the source from which the valve came was not immediately coupled with the description of it. The defendant should be restrained, not from the use of the term "Jenkins valve," or the "Standard Jenkins Valve," but from the use of such terms except in immediate connection with language indicating the source from which the valves come.

[3] That the defendant was willing to mark the Jenkins valves made by it in a proper way was a fact of which the plaintiff had knowledge in January, 1901. The plaintiff was not satisfied with that, although, as we have seen, that was all that could be required of the defendant. The plaintiff insisted that the word "Jenkins" should not

be used, which, as we have seen, the defendant was entitled to use in a proper way. The plaintiff, therefore, in 1901, could have had all the relief to which it is now entitled, without litigation. No complaint appears to have been made that the defendant did not immediately couple the words of description with words indicating the origin of the valve. The absence of complaint of this fact during the period of years from that date down to the filing of the bill should operate to relieve the defendant from liability for damages resulting from an act of which the plaintiff did not complain, while complaining of another act. The plaintiff in equity and good conscience should have spoken of the wrong done to it, if any, by the marking of the valves in such way that the source of origin and the description of the valves were not immediately connected. The defendant could well believe that the name "Jenkins" only was unacceptable to the plaintiff. It would not be right, therefore, that the plaintiff should be awarded damages for the act of the defendant in the past in marking the valves as they have been marked.

The laches and delay of the plaintiff can operate against it no further than this. For improper marking in the future, or for the sale of goods already improperly marked, the plaintiff may be damaged, and if such acts are done or permitted by the defendant, the plaintiff may have its remedy in the future for any breach of the injunction which will follow this opinion.

Inasmuch as the plaintiff in 1901 declined to accept from the defendant the proposition to mark defendant's valves on one or both sides, "Jenkins Valve, made by the Kelly & Jones Co.," which under the law the defendant was entitled to place upon its valves, and inasmuch as the plaintiff has no other or further relief by this extended litigation, other than such as it refused to accept in 1901, the court is of the opinion that it is not entitled to recover full costs in this case; and, inasmuch as it appears from the correspondence that while defendant proposed to mark its valves in a proper way, thereby indicating that that way was more in accord with good conscience than the way in which it had been marking them and continued to mark them, that is, by separating the words of description from the words of source, the defendant should not be relieved of all liability in this case, and should therefore pay a part of the costs. The court is of the opinion that each party should pay its own costs in this behalf expended.

A writ of injunction shall issue restraining the defendant, its officers, agents, and employés, from manufacturing any Jenkins valves (and from selling such valves so manufactured by them) upon which appears a description of the manufactured article in that name, without words of equal prominence, immediately connected with such description, indicating that they have been manufactured by the defendant; each party to pay its own costs.