### JENKINS BROS. v. KELLY & JONES CO.

(Circuit Court of Appeals, Third Circuit. September 3, 1915. Additional Opinion, October 18, 1915.)

### No. 1904.

1. TRADE-MARKS AND TRADE-NAMES ☞71—INFRINGEMENT OF TRADE-MARK—MARKING ARTICLE AFTER EXPIRATION OF PATENT.

Plaintiffs' predecessors manufactured the Jenkins valve, a standard type, under patents; plaintiffs continuing such manufacture after the expiration of the patents. Defendant, Kelly & Jones Company, stamped a like valve on one side "Standard Jenkins Valve," and on the other "Made by Kelly & Jones Company." *Held* insufficient to unmistakably inform the public that the thing manufactured was the work of the Kelly & Jones Company, within the rule that where, during the life of a patent, the name has become the identifying and generic name of the thing patented, such name passes to the public with the cessation of the patented monopoly, and where another avails himself of the expiration of the patent right to make the machine and use the generic designation, the name must not be used so as to deprive others of their rights and deceive the public, but the product must be marked so as to show the public that it is the work of the one making it.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 82; Dec. Dig. ☞71.]

2. TRADE-MARKS AND TRADE-NAMES ☞71—UNFAIR COMPETITION—TEST OF.

Courts do not decide misleading markings on manufactured goods, the patent on which has expired, by the caveat emptor rule of buyer and seller, but on the theory that a buyer who has become accustomed to a particular article is entitled to be unmistakably informed that a person other than the former maker is manufacturing the same; the rights of the rival makers not being the only thing to be considered.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 82; Dec. Dig. ☞71.]

3. TRADE-MARKS AND TRADE-NAMES ☞100—APPROVAL OF MARKINGS OF GOODS—REMAND OF CAUSE.

On appeal from a decree dismissing a proceeding in contempt for violation of an injunction against the use of a misleading marking on manufactured articles, the patent on which had expired, the Circuit Court of Appeals, after reversing the decree, and indicating the general style of marking that should be followed, and on the submission by defendant of markings, approved such markings, the parties having finally agreed

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

thereon, and remanded the cause to the District Court for a determination as to the disposal of articles in the hands of defendant not conforming to the markings as approved.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 114; Dec. Dig. &⊶100.]

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by Jenkins Bros., a corporation, against the Kelly & Jones Company. Decree for defendant (212 Fed. 328), and plaintiff appeals. Cause remanded, with directions to open and modify the decree.

Alan M. Johnson, of New York City, for appellant.
Kay, Totten & Powell, of Pitsburgh, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. By a bill filed in the court below the complainant, Jenkins Bros., a New Jersey corporation, charged Kelly & Jones, a Pennsylvania corporation, with infringing its trademark and with unfair competition in business. The alleged wrong was in so marking a steam valve made by the defendant as to lead the public to believe they were buying complainant's valve. On final hearing that court filed an opinion, reported at 212 Fed. 328, in which the general subject-matter of controversy is so fully set forth that by reference thereto we avoid repetition. In pursuance thereof, a decree was entered enjoining respondent from continuing to mark its valves as it had done. Subsequently complainant petitioned the court to issue an attachment for contempt, alleging, in effect, that a new marking of the valves which the defendant had adopted violated the injunction. On hearing the court discharged the petition for contempt. Thereupon the complainant, assigning for error certain features of the original decree and the discharge of the contempt proceedings, took this appeal.

Without entering into the details of the case, it suffices to say that continuously, but at different times since 1864, first one Nathaniel Jenkins, then his sons under the name of Jenkins Bros., then one of his sons, and finally the complainant corporation, had successively marketed steam valves or gauge cocks and had acquired valuable trade good will in their valves, which were known as "Jenkins valves." These valves contained certain patented features which complainant's predecessors and their licensees embodied therein. Such patent monopolies have expired, and the name "Jenkins" has become fixed in the mind of the public as descriptive of the patented type of valve or disc which the defendant is now entitled to make. But the name "Jenkins" has also become fixed in the mind of the public as descriptive of such valves as were marketed by the patentee, Jenkins, and his successors.

It will thus be seen the case finally narrows down to a proper marking of the valves by the Kelly & Jones Company. In view of the fact that the evidence shows other large concerns have found no difficulty in so cataloguing, marking, and marketing such valves to their

own and complainant's satisfaction, we see no practical commercial difficulty in effecting that result in this case.

[1] At the time this bill was filed the defendant put part of its markings on one side of the valve as follows:

and part on the other as follows:

The defendant contends that, because its use of the name "Jenkins" is accompanied by the statement that the valve is made by the Kelly & Jones Company, its marking has in effect been adjudged lawful by the Supreme Court in Singer v. June, 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118. We do not so read that case. The gist of it is summed up in that often quoted, but often misunderstood and misapplied, extract:

"The result, then, of the American, the English, and the French doctrine universally upheld is this: That where, during the life of a monopoly created by a patent, a name, whether it be arbitrary or be that of the inventor, has become, by his consent, either express or tacit, the identifying and generic name of the thing patented, this name passes to the public with the cessation of the monopoly which the patent created. Where another avails himself of this public dedication to make the machine and use the generic designation, he can do so in all forms, with the fullest liberty, by affixing such name to the machines, by referring to it in advertisements and by other means, subject, however, to the condition that the name must be so used as not to deprive others of their rights or to deceive the public, and therefore that the name must be accompanied with such indications that the thing manufactured is the work of the one making it as will unmistakably inform the public of that fact."

From this it will be seen that the sum and substance of the marking is not the mere literal, physical stamping, printing, or engraving of the maker's name on an article which in the public mind is associated with another's business, but the name must be accompanied with such indications that the thing manufactured is the work of the one making it as will *unmistakably inform the public of that fact.*

It will therefore be seen that the marking which the Supreme Court indorses is not alone the mere letters of a maker's name, but in addition thereto, where necessary, there must be such indications that the

article is the work of the maker as will unmistakably inform the public of that fact. The Singer Case did not provide a marking stencil which was to be rigidly followed in all other cases. What it did do was to lay down the broad, reasonable, and honest commercial principle that in every case and in every article the marking must be such as to unmistakably inform the public of the truth. No case can better than the present illustrate the utter inadequacy of a mere literal use of a maker's name to prevent the public from being deceived; for the testimony is simply overwhelming that, in spite of such marking of Kelly & Jones as maker, engineers who had used complainant's Jenkins valves for years, who sent or went to hardware dealers for such accustomed valves, were furnished with defendant's valves, installed and used them, and were surprised to learn afterwards they had been deceived.

[2] It is no answer to this to say that, if they had used their eyes, they would have learned otherwise. Courts do not decide misleading markings by the caveat emptor rule of buyer and seller. One who buys a standard, dependable article through a number of years learns to trust that article. Use and years have led him to so trust it without question or inspection. If he is to be induced to use any similar article, but which is in fact not the one to which he has grown accustomed, such buyer is entitled to be unmistakably informed of that fact, and that some other than the old-time maker is making the particular article for which he pays. It is not alone the rights of rival makers that are concerned. They are able to take care of their respective rights; but the consumer, on whom the substantial loss falls, in that he is led to pay his money for that which he does not intend to buy, must be protected by the courts, and they can only do so by sanctioning no marking which travels near the border line of commercial deceit.

In saying this we are imputing no intentional wrong to the defendant. It has acted under what it supposed to be its legal rights, but the outcome has proved that the ultimate consumer, with whom as large manufacturers they never come in contact, has been misled by their markings. Why this occurred is perfectly plain. Not only was the word "Jenkins" used, but it was coupled with the word "Standard." The defendant contends, and the testimony so shows, that the word "standard" applied to a valve is a semi-technical term, and differentiates its weight from lighter constructions. But, while this word might well have been so used in trade lists and catalogues, which went to jobbers and dealers who knew and could not be misled as to whose valves they were buying, the case was far different when it came to engineers and firemen, who for years had been using Jenkins valves, when, in answer to an engineer's request for a Jenkins valve, he was handed out by a trusted dealer a valve the most prominent eye catch on which was not "Jenkins," but the words "Standard Jenkins Valve." That word "standard"—"Standard Jenkins Valve"—meant to him the original, genuine Jenkins valve, which he had bought before and intended to continue buying, as the proofs abundantly show. To our mind the adding of the word "Standard" to the name "Jenkins" was utterly at variance with the spirit of the Supreme Court's instruction:

"That the name *must be accompanied with such indications* that the thing manufactured is the work of the one making it *as will unmistakably inform the public of that fact.*"

On the contrary, the word "Standard" was an accompanying indication, which tended, both by association with "Jenkins" and the prominence of their joint place on the valve, to center the attention of the buyer on the name "Jenkins" rather than on the name of the maker. The eye, accustomed to "Jenkins," found that name, and to couple with it the word "Standard" served to further assure a buyer that he was getting the Jenkins valve to which he was accustomed. As defendant sold their Jenkins valves to dealers at less price than complainant's, it was to the dealer's financial interest to sell them to persons who thought they were buying complainant's valve. The testimony not only fails to show that dealers took any steps to protect their customers in that regard, but that the markings enabled them to tacitly mislead their customers.

The possibility of this misleading continues in the new markings of the defendant, which were considered in the attachment proceeding. Indeed, to our minds the possibility of deception was perhaps increased. Such new marking is as follows:

In it, as will be seen, the name "Jenkins" occupies the spot of central prominence, and is on the straight line, which is easiest read. Joined to it, in the next most prominent place, is the word "Standard." In a glance at the valve, these catchwords, "Standard Jenkins Valve," are taken in without effort, while it requires more than a glance to take in the circular line below, where the maker's name is given. After careful consideration we have reached the opinion that the accompanying marking, which has been used for some years by another manufacturer, may be used as a guide for future marking.

The word "Jenkins," therefore, accompanied by the word "Disc," "Type," or like word, may be placed by defendant on a corresponding place on its valve, and on the valve body, and in a central and

prominent position the words "Kelly & Jones Standard Valve" may be added. To avoid needless expense and confusion, we may add that, in case the parties cannot agree on a marking embodying our ideas, the defendant may submit for approval to this court its proposed markings. We will make no change in the order of court below as to costs in that court; the costs of this appeal shall be borne by the defendant. The matter of the disposal of such valves as defendant has on hand will be left to the order and discretion of the court below, and in view of the fact that such valves were marked under the sanction of that court, no accounting will be directed.

The cause will therefore be remanded to the court below, with directions to open and modify its decree, so as to carry out the views expressed above.

### Additional Opinion.

PER CURIAM. [3] Since the foregoing opinion was filed, the defendant has submitted for our approval certain proposed markings, and we have heard also the objections thereto. As a result of the argument the parties have come to an agreement, and in accordance therewith we make the following order:

The defendant may mark its valves in strict accordance with the sketch affixed hereto, namely:

—and the clerk is directed to transmit to each of the parties a certified copy of this order with a blue print of the sketch.

The matter of the disposal of such valves as the defendant may have had on hand at the time of the decree below, or may have since offered to the market, is committed to the discretion of the District Court.

⬖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes